## Court of Appeals.

### Nov. 20, 1900.

## THE PEOPLE v. LORENZO PRIORI.

### (164 N. Y. 459.)

1. MURDER—SUFFICIENCY OF EVIDENCE.

   When, if the People's witnesses are to be believed, there is not only ample proof of circumstances which tend to show that the decedent

was killed by defendant, but also direct proof to the same effect, the question of the credibility of witnesses and as to whether decedent was killed by defendant and, if so, whether the act was committed under circumstances constituting the crime of murder in the first degree are for the jury.

2. SAME—TRIAL—PRIVILEGE OF WITNESS.

It does not follow that a witness is not entitled to his privilege, because, upon the face of the question when unexplained it did not appear that the answer would have the effect claimed. He is entitled to this privilege if the evidence or his examination as a witness would either tend to incriminate him or disclose a link in the chain of testimony which might convict him of crime and is protected without being required to explain how he might be incriminated by the answer, and the question whether the witness should be required to answer rests largely in the discretion of the court.

3. TRIAL—REMARKS OF DISTRICT ATTORNEY TO JURY.

In summing up, on a trial for murder the district attorney persisted again and again in declaring what the law was as to premeditation and deliberation in spite of the statement by the court that it would, at the proper time, instruct the jury upon the subject, and in spite of the court's remark " I would not discuss it." *Held*, that while the course pursued by the district attorney was not seemly or to be commended it did not present reversible error as the court distinctly and plainly instructed the jury upon the question and instructed it to disregard any matter that had been stated as to the law or what the law should be, or in regard to any opinion or decision of the courts, except such as should be made by the trial judge.

4. SAME—APPEAL.

The district attorney stated that " in the country of defendant the regard for human life is not as with us * * * in the kingdom from whence he comes to murder there simply means a penalty for twenty years in prison," with no proof in the case to sustain the statement, but on defendant objecting withdrew his remarks on the subject, and the court expressly directed the jury to disregard them. *Held*, that the error, if any, was merely technical and should be disregarded on appeal.

5. SAME—FAILURE OF DEFENDANT TO TESTIFY—CODE CRIM. PRO. § 393.

Where the court calls the attention of the jury to the provisions of section 393 of the Code of Criminal Procedure and charges that while the defendant in all cases may testify in his own behalf, still,

that his neglect or refusal to do so does not create any presumption against him, it corrects any error of the district attorney in commenting on defendant's failure to testify in his own behalf.

**6. SAME—READING OF LAW BOOKS BY JURY.**

Where, on a trial for murder, one of the jurors had a copy of the Penal Code and Code of Criminal Procedure which he read and exhibited to his fellows, but the book was taken away as soon as the attention of the prosecution was called to it and no objection raised by defendant until an adverse decision had been reached. *Held* that while it was irregular and misconduct on the part of the jury yet as there was no proof that it in any way affected the result or was prejudicial to defendant, the court below was justified in denying an application for a new trial, based on that ground.

**7. SAME—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.**

A new trial will not be granted on newly discovered evidence where it is not such as required the court below to hold that it would probably change the result if a new trial was granted nor that it could not have been discovered before the trial by the exercise of due diligence.

APPEAL from a judgment of the supreme court, rendered at a trial term for the county of New York April 28, 1899, upon a verdict convicting the defendant of the crime of murder in the first degree, and from an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

Bankson T. Morgan and Samuel Seabury, for appellant.

Charles E. Le Barbier, for respondent.

MARTIN J.—The judgment appealed from was entered upon the verdict of a jury rendered upon a trial in the supreme court, held in the city and county of New York. At the close of the evidence of the prosecution the defendant asked the court to withdraw from the consideration of the jury the charge of murder in the first degree upon the grounds that the People had not proved facts sufficient to warrant the jury in finding that the defendant had committed that crime, and " that the

People have not proved facts sufficient to sustain the crime beyond a reasonable doubt." This motion was denied and the defendant excepted. At the close of all the testimony the defendant's counsel again moved to take from the consideration of the jury the charge of murder in the first degree upon the same grounds, and also upon the additional grounds "That the preponderance of evidence shows that the defendant was not guilty of said crime," and "That the testimony given by the People to sustain the burden of proof of said crime is wholly or in part illegal." He also moved the court to direct the jury to acquit him of the crime of murder in the second degree, and of the crime of manslaughter. These motions were all denied, and the defendant excepted.

The first question presented by the defendant's exceptions relates to the sufficiency of the evidence to justify the submission to the jury of the question of the defendant's guilt of the crime charged in the indictment. A careful examination of the record renders it obvious that the proof was sufficient to require the court to submit that question to the jury. If the People's witnesses were to be believed, there was not only ample proof of circumstances which tended to show that the decedent was killed by the defendant, but there was direct proof to the same effect.

Under that evidence the question of the credibility of witnesses and the question whether the decedent was killed by the defendant, and if so, whether the act was committed under circumstances constituting the crime of murder in the first degree were clearly for the jury. People v. Kerrigan, 147 N. Y. 210; People v. Youngs, 151 N. Y. 210, 216; People v. Kelly, 113 N. Y. 647, 648; People v. Fish, 125 N. Y. 136, 144; People v. Constantino, 153 N. Y. 24, 35; People v. Ferraro, 161 N. Y. 365, 376.

No good purpose can be served by reviewing or stating in detail the facts and circumstances established by the evidence, as there can be no reasonable doubt that the proof was sufficient to present a question of fact as to whether the defendant

was guilty of the crime of which he was convicted.   Hence
we content ourselves with the statement that, after a careful
examination of all the evidence, we have reached the conclu-
sion that it was sufficient to justify the court in submitting
that question to the jury and to uphold its verdict.

Other questions are presented by certain exceptions taken
upon the trial and by the action of the trial court in denying
the defendant's motions for a new trial based both upon alleged
legal errors and upon the ground of newly-discovered evidence.

Upon the trial one Messina, called as a witness for the
People, on his cross-examination, testified that he visited the
defendant while in prison, and admitted that he stated to him
that he would not testify against him because he saw nothing.
The defendant afterwards called as a witness one Di Angelo
who, at the time of that conversation, was a prisoner in the
Tombs under an indictment for the crime of murder in the
first degree, and who was brought into court to testify.   The
court thereupon directed that his attorney should be present
to advise him in regard to his rights as a witness.   Afterwards
the attorney stated to the court that he had seen the witness
and informed him as to his rights.   The witness then declined
to be sworn.   The court, however, directed him to take the
oath, and stated that it would see that his rights were pre-
served.   It then informed him that he could decline to answer
any question that might be put to him.   It appears to have
been conceded that he was under indictment for the crime of
murder in the first degree; that he was in actual confinement,
and was brought into court by its order.   The counsel for the
defendant then proceeded to examine him.   The court in effect
instructed the witness that he might decline to answer any
question where the answer would tend to incriminate or de-
grade him.   The defendant's questions were as follows: " You
are at present a prisoner in the Tombs?"   " Did you, some
time during the month of January, 1899, in Cell 69, meet
one Antonio Messina and Mrs. Priori, and at the time the
defendant Priori was in the same cell?"   " Did you on that

occasion hear Antonio Messina say that he knew nothing about the case in which Priori was defendant, or anything to that effect?" The witness declined to answer any of these questions upon the ground that the answer would tend to incriminate or degrade him. The defendant's counsel then asserted that his refusal was not the voluntary act of the witness, but resulted from a statement of the court, and for that reason an exception was taken. To this the court replied: "I asked him if he put his ground upon his constitutional rights, putting his constitutional rights to him. If you wish an exception to that you may have it." The defendant's counsel still desired to have his exception noted, and the court then remarked: "I informed him of his constitutional rights, and if he places his refusal on that, I have got to sustain it." To that ruling an exception was taken. The defendant now contends that the privilege of declining to answer these questions upon the ground that the answers would degrade or incriminate the witness, was personal to him, and that it was error not to require him to answer. The contention that the privilege was personal to the witness is perhaps correct, but, under the circumstances disclosed, the court was justified in informing the witness of his rights, and when thus informed, it is manifest that he personally declined to answer upon the grounds stated.

Assuming, as I think we must, that the witness personally claimed his privilege, the question is whether the court was justified in according it to him. Whether such privilege should be allowed or disallowed rested somewhat in the discretion of the court. Where a court can discover from the circumstances that the giving of evidence upon a certain subject may tend to incriminate or disgrace a witness, it has the right and it is its duty to sustain his privilege. Before the defendant could claim that this ruling was erroneous he was at least required to show such facts as would render it clear that an answer to the questions propounded would not incriminate or disgrace the witness. We think the record is insufficient to establish that fact. It was for the court to de-

termine whether, under all the circumstances, the witness should be accorded the protection and privilege he invoked. It does not follow that the witness was not entitled to his privilege, because, upon the face of the question when unexplained, it did not appear that the answer would have the effect claimed. He was entitled to this privilege if the evidence or his examination as a witness would either tend to incriminate him or disclose a link in the chain of testimony which might convict him of crime, and was protected without being required to explain how he might be incriminated by the answer. We think, under all the circumstances, whether this witness should have been required to answer the questions propounded was for the trial court to determine and rested largely in its discretion. Where such a privilege is claimed the courts have recognized the impossibility in most cases of anticipating the effect of an answer. People ex rel. Taylor v. Forbes, 143 N. Y. 219, 231.

Moreover, the obvious purpose of the defendant's interrogatories was to prove that the witness Messina, at the time referred to, said that he would not testify against the defendant because he saw nothing. That fact had already been proved by the witness Messina and it was undisputed. Therefore, even if it were conceded that the defendant was entitled to prove what occurred in the Tombs when Messina was there and that he said he would not testify against the defendant because he knew nothing, it could not have affected the result or the credibility of the witness. The witness himself having sworn to that fact which was undisputed, the defendant had the benefit of the evidence as fully as though it was also proved by the witness called. We are, therefore, of the opinion that the rulings of the court upon this subject did not constitute error which would justify us in disturbing the judgment below.

The defendant also claims that the remarks of the district attorney in his address to the jury were unwarranted, prejudicial to him, and of such a character as to require the grant-

ing of a new trial. We have carefully examined them as set forth in the record, but are unable to find any statement which was unwarranted, or was not a fair argument, comment or appeal to the jury except in the respects hereinafter specified. " It is the privilege of counsel in addressing a jury to comment upon every pertinent matter of fact bearing upon the questions which the jury have to decide. This privilege it is most important to preserve, and it ought not to be narrowed by any close construction, but should be interpreted in the largest sense. * .* * The jury system would fail much more frequently than it now does if freedom of advocacy should be unduly hampered and counsel should be prevented from exercising within the four corners of the evidence the widest latitude by way of comment, denunciation or appeal in advocating his cause. This privilege is not beyond regulation by the court. It is subject to be controlled by the trial judge in the exercise of a sound discretion, to prevent undue prolixity, waste of time or unseemly criticism. The privilege of counsel, however, does not justify the introduction in his summing up of matters wholly immaterial and irrelevant to the matter to be decided, and which the jury have no right to consider in arriving at their verdict." This is the language of Judge ANDREWS in Williams v. Brooklyn El. R. R. Co. 126 N. Y. 96, 102. Applying this rule as well as that stated in the case of People v. Feilding, 158 N. Y. 542, it is manifest that the district attorney did not transcend the proper limits of advocacy in his address to the jury, except in the two respects which we will now consider.

First, while summing up, the prosecuting officer, in discussing the question of premeditation and deliberation, commenced to state what had been decided upon that subject by this court. To this the defendant's counsel objected upon the ground that it was a question of law and was incorrectly stated, when the court remarked that it would at the proper time instruct the jury as to the law upon the subject. The district attorney, however, persisted in declaring what the

law was and what had been· decided, whereupon the court
instructed the jury that they should take the law as the court
laid it down and that anything that was said in regard to it
by counsel on either side the jury were to disregard, except as
it was re-stated by the court.   To that the defendant excepted.
The counsel for the People still continued to call the attention
of the jury to the law, when the court said, " I would not dis-
cuss it," adding that remarks in regard to the law were to be
made by the court.   The district attorney, however, still per-
sisted in stating the law to the jury, notwithstanding the ad-
vice of the court to desist from further arrogating to himself
the duty which obviously rested upon it and not upon the
district attorney.   To this the defendant again objected, and
the court replied that he was entitled to the objection, adding
that it was the discussion only of settled legal questions, that
they were matters for the court and not for the counsel, and
that the inferences might be as claimed, but that the law was
for the court.   We are unable to justify the course pursued by
the district attorney in disregarding the proper suggestions of
the court.   Yet, we think his action does not present reversible
error, because the court distinctly and plainly instructed the
jury upon the question of premeditation and deliberation, and
also instructed it to disregard any matter that had been stated
as to the law or what the law should be, and any statement
made in regard to any opinion or decision of the courts, except
such as should be made by the trial judge.   Here was not only
a plain statement of the law upon the subject as to which the
district attorney sought to instruct the jury instead of permit-
ting the court to do so, but it also directed the jury to disre-
gard any statements which had been made as to what the law
was or as to the opinion or decision of any court, except so far
as the trial court laid down the law in its charge.   Therefore,
while the action of the district attorney was not seemly or to
be commended, yet, we think it was insufficient to constitute
an error which affected the substantial rights of the defendant.

It was at most technical, and under section 542 of the Code of Criminal Procedure, we are required to disregard it.

Second.  The only other respect in which the district attorney transcended proper limits in his address was in his statement as to the law of the defendant's native country.  His remarks upon that subject were as follows: " It was said by the gentleman who preceded me that the difficulty to which reference was made by the testimony in this case was of too trifling a character to consider it a motive.  There is nothing in that contention.  These people are impulsive.  Upon the slightest provocation human life is sacrificed.  Without desiring to prejudice you against him because of his race—and I beg you not to be prejudiced against him because of that— yet that regard for human life is not with them as it is with us.  Here when the divine command, ' Thou shalt do no murder,' is transgressed, a life must be expiated for a life, but in the kingdom from whence he comes to murder there simply means· a penalty for twenty years in a prison."  There was no proof in the case to sustain those statements, and if uncorrected or not withdrawn they might have justified a reversal.  But examining the record, we find that when the defendant objected to them the district attorney withdrew his remarks upon that subject and the court expressly directed the jury to disregard them.  We think this was a sufficient withdrawal and direction by the court to remedy or remove any error flowing from the statements referred to, that the error, if any, was merely technical and should be disregarded upon this appeal.  Chesebrough v. Conover, 140 N. Y. 382, 388; Marks v. King, 64 N. Y. 628; Platner v. Platner, 78 N. Y. 90; Gall v. Gall, 114 N. Y. 109, 121; Holmes v. Moffat, 120 N. Y. 159; Blashfield v. E. S. Tel. & Tel. Co., 147 N. Y. 520, 527; People v. Schooley, 149 N. Y. 99, 103; People v. Wilson, 141 N. Y. 185, 191; Greenfield v. People, 85 N. Y. 75, 90; Cole v. Fall Brook Coal Co., 159 N. Y. 59.

It is further contended that the district attorney improperly and persistently commented,. directly and indirectly upon the

failure of the defendant to testify in his own behalf, and that such comments were prejudicial to him. This criticism is not justified by the record. In that respect he kept well within the evidence, and his comments were proper. Moreover, at the defendant's request the court· called the attention of the jury to the provisions of section 393 of the Code of Criminal Procedure, and charged that while the defendant in all cases may testify in his own behalf, still, that his neglect or refusal to do so does not create any presumption against him. This, under the doctrine of Ruloff v. People, 45 N. Y. 213, corrected any error of the nature claimed, if it existed.

Another contention of the defendant is that during the trial one of the jurors had a copy of the Penal Code and Code of Criminal Procedure, which he read and exhibited to some of his fellows. As soon, however, as the attention of the prosecution was called to the fact, the book was taken from the juror.· The defendant omitted to raise any objection, or make any request to the court to specially instruct the jurors to disregard anything that had been read. No attention was given to this incident, although known to the defendant, until the trial was ended and an adverse decision had been reached. If he regarded this matter as prejudicial to him, good faith required that he should at least call the attention of the court to the fact so' that any effect, or supposed effect, of the act might be corrected and removed by proper instructions from the bench. This was not done, presumably because the defendant, like the prosecution, did not regard it of sufficient consequence to require any special action, or think that it in any way prejudiced the rights of the parties. In the latter conclusion we concur. This transaction was made one of the grounds upon which the defendant, before sentence, moved for a new trial. What was read, or that it had any connection with or bearing upon, this case, or in any way affected the verdict, is not alleged or set forth. In People v. Draper, 28 Hun, 1, where the jury obtained possession of a copy of the Revised Statutes while deliberating upon their verdict, it

was held that their obtaining it was an irregularity but did not vitiate the verdict, unless it was shown that the defendant was prejudiced thereby. The cases cited in the opinion in that case seem to justify the conclusion there reached. We are of the opinion that while reading the Code by the jurors may be regarded as irregular and as misconduct on their part, yet, as there is no proof that it in any way affected the result or was prejudicial to the defendant, the court below was justified in denying his application for a new trial so far as it was based upon that ground. None of the jurors called for books, and none were furnished them. It is quite obvious from the affidavits that the book they obtained was inadvertently left within their reach, without any design that it should come to their hands, and there is no proof as to what portion of either the Penal Code or Code of Criminal Procedure they read or in any way discussed. Under these circumstances, we think the action of the jurors did not constitute such an irregularity or such misconduct as required the court to grant a new trial. People v. Gaffney, 14 Abb. Pr. R. (N. S.) 36.

There is still another circumstance which renders it apparent that no substantial injury to the defendant could have resulted from this action of one or more of the jurors, which is, that the court in effect charged the jury that it was to receive the law as the court declared it, independent of any knowledge it might otherwise acquire.

The only other ground upon which the defendant bases this appeal is that the court below erred in not granting a new trial upon the ground of newly-discovered evidence. The affidavit upon which this application was based was to the effect that on Sunday, December 11, 1898, the day of the homicide, at about six o'clock P. M., one Napoleone Dei Medici, was on Broome street between Sullivan and Thompson streets, and within about ten feet of the stoop to the drug store at No. 530 Broome street; that he heard two pistol shots fired from behind him; that he looked around and saw a short man run down the steps of No. 526½ Broome street and jump upon

a car then passing through that street; that at the time the shots were fired he saw Lorenzo Priori standing on the stoop in front of the drug store, and that he knew that Priori did not fire the shots that he heard; that after hearing the shots he went on his way towards Sullivan street; that when he saw the defendant he had his back towards Thompson street and had both of his hands in his pockets; that he had known the defendant by sight for several years before the day of the shooting; that he did not at that time remember the defendant's name; that he saw two policemen after the shooting come from Sullivan street to Broome street, but did not wait to see what happened; and that the defendant and the person whom he saw run down the steps and get upon the car were the only persons. he saw upon the street at the time of the shooting.

The rule applicable to the determination of the question whether a new trial should be granted upon the ground of newly-discovered evidence is quite correctly stated in the appellant's brief as follows:

" Newly-discovered evidence in order to be sufficient must fulfill all the following requirements: 1. It must be such as will probably change the result if a new trial is granted; 2. It must have been discovered since the trial; 3. It must be such as could have not been discovered before the trial by the exercise of due diligence; 4. It must be material to the issue; 5. It must not be cumulative to the former issue; and 6. It must not be merely impeaching or contradicting the former evidence."

·If it be assumed that this evidence has been discovered since the trial, that it would be material to the issue, would not be cumulative, nor merely impeach or contradict former evidence, still, we think it is not such as required the court below to hold that it would probably change the result if a new trial was granted.  Nor do we think there was sufficient proof that it could not have been discovered before the trial by the exercise of due diligence.  Under these circumstances, assum-

ing the law as stated by the defendant, the trial court was justified in denying this motion, and its action in that respect must be affirmed. ·

Having thus briefly stated the views of this court upon all the questions raised by the defendant, and having found no error which would justify the court in disturbing the judgment appealed from, it follows that it should be affirmed.

PARKER, Ch. J., O'BRIEN, BARTLETT, HAIGHT, VANN and LANDON, JJ., concur.

Judgment of conviction affirmed.